GRAHAM *v.* GRAHAM.

1. FRAUD—PRESUMPTIONS—BURDEN OF PROOF—ACCOUNTING.

In an action for an accounting against the son of intestate and his wife who had been employed upon a farm of decedent, upon an agreement between the parties that deceased should pay a stated sum to the defendants, who claimed to have accounted for all the proceeds of the place, evidence considered and *held,* insufficient to sustain the contention of the complainant administrator that a portion of the proceeds of the farm had been fraudulently retained by the defendants and never accounted for.

2. SAME.

Fraud cannot be presumed but must be proved: it is not inferable from circumstances and must be clearly established by satisfactory evidence: if the facts are consistent with an honest purpose the burden is not sustained.

Appeal from Calhoun; North, J. Submitted April 21, 1914. (Docket No. 86.) Decided March 18, 1915.

Bill by Romeyn Graham, as administrator of the estate of Adeline P. Graham, deceased, against Albert Graham and Salona Graham for an accounting. From a decree for complainant, defendants appeal. Reversed.

*Herbert E. Winsor* (*Stewart & Jacobs,* of counsel), for complainant.

*J. M. Hatch & Son,* for defendants.

McALVAY, J. Complainant, as administrator of the estate of his mother, Adeline P. Graham, deceased, filed his bill of complaint in this cause against Albert Graham, his brother, and Salona Graham, the wife of his brother, for an accounting against them, claiming that moneys had come into their hands belonging

to the mother during her lifetime which had not been paid to her or accounted for. To this bill of complaint defendants demurred. The demurrer having been overruled, defendants appealed to this court, which resulted in an affirmance. *Graham* v. *Graham*, 171 Mich. 307 (137 N. W. 153). Reference is had to the opinion in this case. After the case was remanded to the circuit court, defendants filed separate pleas, and for the purpose of saving time it was stipulated that defendants might file joint and several answers to the bill of complaint without waiving the benefit of such pleas, which was saved to them to be argued and considered upon the hearing in the circuit or Supreme Court. The cause was then heard upon proofs taken before the court and resulted in a decree in favor of complainant in the sum of $2,000. Both parties have appealed to this court.

Adeline P. Graham, deceased, for many years owned and occupied during her lifetime a farm of about 160 acres in Calhoun county. Defendant, her eldest son, and his wife first went upon this farm in 1888 and remained there with deceased for several years. They were employed by her upon the farm, but the terms of that employment do not appear. They removed from the farm in 1894, when the mother procured the services of another son, who for some reason remained with her but a short time. They returned in 1895, when, as defendants claim, the mother and son entered into an agreement that he was to live with her on this farm and do such work as she should require of him; also, that his wife was to assist his mother in doing the housework; that defendant Albert Graham was to have the right to run his own farm of 80 acres situated a short distance from his mother's farm, and was to receive for the services of himself the sum of $200 and $100 for his wife's services per year. The mother also agreed by

the terms of the contract to board and lodge her son and wife and all hired help employed on the farm. All expenses in conducting this farm were to be paid by the mother. Under this agreement these parties continued from 1895 to the time of her death in March, 1910, living together during the entire time as one family, apparently without any disagreement between them. After the mother's death, defendant Albert Graham, on August 11, 1910, filed a claim against her estate for a balance of $2,812.22, claimed by him to be due under the above contract of employment with her. This claim was opposed and brought to a hearing before the commissioners of claims in the said estate. It was allowed at the sum of $300. Claimant appealed from the decision of the commissioners to the circuit court, and it was there settled, compromised, and certified back to the probate court to be allowed at the sum of $1,100, with the understanding, as claimed by defendant Albert Graham, and his attorneys, that this was a full settlement of all matters arising out of the contract of employment and all set-offs, if any, due the estate of Adeline P. Graham. Afterwards, on November 9, 1911, the bill of complaint in this cause was filed. The bill of complaint was framed and the cause was heard and presented by complainant before the court upon the theory that defendants, acting jointly, during all the years from 1895 to 1910, systematically and fraudulently were stealing moneys which came into their hands as agents for Adeline P. Graham from the sales of produce and grain from the farm and all other sources, amounting altogether to large sums of money.

The theory and contention on the part of defendants is that complainant has no standing in a court of equity; that if any amount was owing this estate it was a matter of indebtedness from the defendant Albert Graham arising out of the agreement between

himself and the deceased mother; that all the acts and doings for which complainant claims a recovery arose from such relations, and no others are claimed or shown by complainant; that defendants are therefore improperly joined; that complainant has a complete and adequate remedy at law to recover anything owing from defendant Albert Graham to him as administrator. They also contended that no recovery could be had for any indebtedness which accrued more than six years prior to the death of Adeline P. Graham, and they deny that any property or money belonging to Adeline P. Graham was ever kept by them or either of them and that they paid the same to her and after her death gave all that remained in their possession to complainant.

From an examination of the entire record, we find that Adeline P. Graham, who lived to the ripe old age of 88 years, was during her lifetime a woman of considerable ability and up to within a few months of her death was able to and did look after her business affairs. Her husband died about the year 1885, leaving her with this farm of 160 acres, which she occupied until the time of her death. At first she had the assistance of two of her sons for a year or two, and in 1888, about the time defendants were married, she first secured their services. They continued with her from that time until 1894 without interruption, apparently with satisfaction to all parties. These relations were then interrupted, if the reason appears in the record we do not recall it, and the defendants went upon a farm which Albert Graham had purchased, not far from the homestead, and remained there until 1895, when she again, because of some dissatisfaction on her part with the son she had employed during the interim, sought their services. As already stated, defendant Albert Graham and his wife returned to the homestead, when an agreement was entered into with

184 Mich.—41.

his mother, the terms of which have already been given.. Defendants remained there continuously with his mother, doing such work as she required, and at the same time carrying on the work of his own farm, until the time of her death. There is a dispute in the record as to whether this agreement was made with the son, or with him and his wife jointly.

The record shows that during this time defendant Albert Graham marketed and. sold the products from his mother's farm and employed the hired men necessary to properly do the work, whose wages were paid by the mother, and also personally performed work upon her place; that defendant Salona Graham during all that time assisted in and about the household duties and the customary work which farmers' wives perform. She did the marketing of butter and eggs and purchased groceries and meat for the use of the family. She also frequently took money, checks, and drafts for her mother-in-law, Mrs. Graham, at her request, and deposited them in the banks, and frequently drew out from the banks money in both large and small amounts for her.

The record shows without dispute that no books of account were kept by any of these parties and, with the exception of some memoranda made by defendant Albert Graham and the bank passbooks, there is no written evidence of the transactions between these parties. Defendants produce their individual passbooks at two banks and one joint passbook at a savings bank, also passbooks of two banks in the name of Adeline P. Graham. All these passbooks show deposits and withdrawals from time to time, sometimes in quite large amounts, and no question is raised but that the entries in these passbooks were made at the times they purport to be made, or as to the correctness of the amounts they represent. It is admitted in the record that, after the death of the mother, Al-

bert Graham and his wife turned over to the complainant as administrator $5,000 at one time, represented by a certificate of deposit of $4,000 and a certificate or check for $1,000.

There are several difficult and interesting questions of law raised by each of the parties to this cause; but, as we view the case, we do not consider it important or necessary to discuss such propositions in order to decide the case.

The court finds itself in the same difficulty in regard to the evidence introduced on the part of the complainant as was met by the learned trial judge, expressed by him in his opinion, as follows, after speaking of some of the difficulties in the case:

"For reasons hereinafter indicated, this case has been one most difficult of determination; and I wish to make the record clear on this point, that I have decided the questions involved upon the theory that neither of the defendants could give competent testimony as to those matters concerning the accounting which were equally within the knowledge of Adeline Graham. With this rule of evidence in mind, I am of the opinion that the complainant has established his right to an accounting; but it is by no means easy, under the proof offered in this case, to make a determination as to what the measure or amount of the accounting should be."

And again:

"And this difficulty has been still further increased by the lack of positive, definite testimony as to what the measure of recovery should be in case an accounting was decreed."

The same difficulty was experienced by the solicitors for complainant, who in a supplemental brief say:

"The complainant had to rely solely upon strangers for his proof and was able to obtain data for but a portion of the period covered by defendants' services. Just what the full amounts due Mrs. Graham would be upon a full and fair accounting can only be conjectured."

This cause is founded upon the fraudulent appropriation of moneys by defendants which came into their hands while they were performing work for complainant's decedent. Including the parties and their relatives, 37 witnesses were examined, some at great length. It will be of no benefit to the profession to present an abstract of the testimony in the case offered to show the fraudulent conduct of defendants in attempting to prove the amount of money belonging to this estate which has been wrongfully retained by them. From a critical examination of all of this testimony, we do not find a single item of positive, definite evidence as to any specific amount or amounts wrongfully retained by defendants from this estate at any time.

The theory of complainant is that, because of the length of time during which these parties continued their relations, much larger amounts must have come into the hands of these defendants than the record shows, yet, in no instance is the testimony stronger than estimates as to what the annual income from this farm ought to be or would naturally be under the circumstances. In no case is proof made of what such income in any instance amounted to, nor any testimony from which could be gathered an amount to charge against these defendants in any particular instance. We find nothing more than suggestions, and these not of strong character. All of this testimony was too speculative to form a basis of a finding of the actual income from this farm in any year, or to fix any specific amounts from other sources which had not been accounted for.

The rule that fraud cannot be presumed but must be proved, that it is not inferable from slight circumstances, and must be clearly established from satisfactory evidence, is too well settled in this State to require citation of authorities. There is another rule

of law which applies to cases of this character, and that is that fraud must be proved by facts which are inconsistent with an honest purpose.

In the instant case all of the acts of these defendants which are admitted and proved are entirely consistent with an honest purpose and negative any theory of fraudulent conduct. The facts that certain deposits were made by defendant Salona Graham and like amounts withdrawn on the same date, and in some instances of the same amounts, as shown by the passbooks of herself and Mrs. Adeline Graham, do not raise any presumption of fraud, when one considers that the two trading points where she went with her butter and eggs were some distance from home and that she only went occasionally. It would be natural that, having money to deposit or withdraw for both parties, it would be done on the same trip. The amounts of these entries are not extraordinary, nor is it possible to draw an inference of dishonesty from the facts that these parties kept no books and cannot remember all of the items of cash received by them during 15 years.

Mrs. Adeline Graham during these years had large expenses outside of her farming interest. She made trips to Colorado. Letters are in evidence from her while there. She went to care for and bring back consumptive children who succumbed finally to the disease. During these years she made advancements to all her sons. It is admitted that she gave Edward Graham $3,500, that she gave Albert Graham, this defendant, $2,000, that she gave Frank A. Graham $500, and complainant $400, in cash, the large portion of it, if not all of it, during the period while defendants lived with her. If that amount is taken from the receipts of this farm worked only to one-half its capacity, as is claimed, by her orders, a large surplus could not be expected.

Our conclusion is that the complainant has not established his case against these defendants, and that there is no evidence in the case which sustains his charge of fraudulent appropriation of the money or property of his decedent.

It follows that the decree of the circuit court is reversed and set aside, and the bill of complaint is dismissed, with costs of both courts in favor of defendants.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.