# E. R. REITSCH and W. C. McClintock v. JOHN McCARTY.

(160 N. W. 694)

**Sheriff's certificate — assignment of — purchaser — fraud or deception — validity of assignment — question by parol evidence — intention — redemption.**

1. Where no fraud or deception has been practised by the purchaser, a person will not be allowed to question by parol evidence the validity of an assignment of a sheriff's certificate, and to contend that he executed the same intending it to be a certificate of redemption.

**Fraud — proof of — clear and convincing — facts — honest purpose.**

2. Proof of fraud must be clear and convincing, and be evidenced by facts which are inconsistent with an honest purpose.

**Sheriff's certificate — assignment of — evidence — parol — intention of parties — purchaser — redemption — trustee.**

3. Evidence examined and *held*, not to justify the contention that the assignments of certain sheriff's certificates were either intended to be certificates of redemption, or were made to the purchaser not for himself, but as a trustee.

Opinion filed September 14, 1916. Rehearing denied December 30, 1916.

Appeal from the District Court of Pierce County, *Burr*, J.

Action to determine adverse claims.

Judgment for plaintiffs. Defendant appeals.

Reversed.

Statement of facts by BRUCE, J.

The complaint in this action is in the statutory form of an action to determine adverse claims to three quarter sections of land. It alleges that the plaintiffs have liens or encumbrances upon the real estate described; that the defendant claims some estate or interest or lien or encumbrance in or upon the same adverse to the plaintiff, and prays that the defendant be required to set forth his adverse claims, and that their validity and priority may be determined; that the same be adjudged null and void, and that the defendant be decreed to have no estate or interest in, or lien or encumbrance upon, said property, and that the title be quieted as against said claim of the defendant.

The answer alleges that on the 1st day of December, 1905, W. C. McClintock was the owner of one of these quarters; that on said date he mortgaged it to the Merchants Bank of Rugby; that on or about January 28, 1908, said mortgage was foreclosed and a sheriff's certificate delivered to said bank; that thereafter and on January 22, 1909, said certificate was assigned for a valuable consideration to the defendant, John McCarty, and thereafter and on July 16, 1909, a sheriff's deed was duly delivered to him, and that he now claims title under the same.

The answer further alleges that on the 1st day of May, 1905, one Theo. P. Scotland was the owner of another of these quarter sections; that on May 1, 1905, he mortgaged the land to the said bank; that thereafter, default being made, this mortgage was foreclosed, and on the 28th day of January, 1908, a sheriff's certificate was delivered to said bank as purchaser; that thereafter and on the 22d day of January, 1909, said bank sold and assigned said certificate for a valuable consideration to the said John McCarty; and thereafter and on the 16th day of July, 1909, and no redemption having been made, a sheriff's deed was delivered to said John McCarty under which he now claims title. The answer further alleges that on the 3d day of December, 1904, one Nassif Boussad was the owner of the third quarter; that on the 3d day of December, 1904, said Boussad mortgaged said land to the said Merchants Bank; that thereafter said mortgage was foreclosed, and on the 28th day of January, 1908, a sheriff's certificate was delivered to the said Merchants Bank as purchaser at the sale; that thereafter and on or about the 22d day of January, 1909, said certificate was assigned by the said bank for a valuable consideration to said defendant, John McCarty; that thereafter, no redemption being made, the said McCarty obtained a sheriff's deed thereunder and under which he now holds and claims title.

The answer then prays that the title of the defendant McCarty be quieted as against the claim of the plaintiffs.

To this answer a reply was filed, which admits the execution of the notes and mortgages referred to in the answer, and the foreclosure of the mortgages, and the execution and delivery of the sheriff's certificates and sheriff's deeds, but denies the ownership of the defendant McCarty and the assignment of the sheriff's certificates to him.

It alleges that Theo. P. Scotland & Company was a domestic corporation; that Theo. P. Scotland is and was the secretary, treasurer, and a stockholder thereof; that his wife, Clara M. Scotland, was and is a stockholder; that on the 12th day of May, 1905, Theo. P. Scotland was and still is the owner of the southeast quarter, and lot 5, in section 30, and lots 1 and 2, in section 31, township 156, range 72; and of the southeast quarter of section 5 of said township and range; that on the 29th day of March, 1906, Theo. P. Scotland & Company was the owner of the southwest quarter of the northwest quarter and the north half of the southwest quarter, and the southeast quarter of the southwest quarter of section 28, township 156, range 72, subject to the mortgage of the Merchants Bank of Rugby, executed by Nassif Boussad and wife, described in the complaint and the payment of which mortgage the said Scotland & Company had assumed; that on the 12th day of May, 1905, both the said Theo. P. Scotland and the said Theo. P. Scotland & Company were indebted to the Merchants Bank of Rugby, and on said day and for the purpose of securing said indebtedness and of securing the payment of money to be thereafter loaned to them, and any and all future indebtedness to the said bank, the said Theo. P. Scotland and Clara M. Scotland, his wife, executed and delivered to the plaintiff W. C. McClintock warranty deeds of the southeast quarter of the southeast quarter, lot 5, in section 30, and the southeast quarter of section 5, in township 156, range 72, it being understood that the said McClintock should hold said property in trust for the said Merchants Bank, and as security for the payment of the indebtedness hereinbefore mentioned; that on the 29th day of March, 1906, Theo. P. Scotland & Company executed and delivered to the said W. C. McClintock, to be held in trust for him for the said bank, and as security for the indebtedness above mentioned, the southwest quarter of the northwest quarter and the north half of the southwest quarter and the southeast quarter, and the southeast quarter of the southwest quarter of section 28, in township 156, range 72; that on the 11th day of December, 1905, Theo. P. Scotland executed and delivered to the Merchants Bank of Rugby a promissory note for $1,600 with interest at 12 per cent per annum before and after maturity, payable on demand; that no part of this note has been paid except the sum of $1,000, and on or about December 28, 1905, the interest thereon after the 11th day of August, 1907; that on the 15th

day of December, 1906, the said Theo. P. Scotland also executed and delivered to the said Merchants Bank another promissory note for $2,941.15 with interest at the rate of 12 per cent per annum before and after maturity; that no part of said note has been paid except the interest has been paid thereon until the 15th day of November, 1908, and the sum of $328.03 paid on or about April 17, 1909, and the sum of $441.15 paid on or about the 7th day of November, 1907; that on or about the 15th day of November, 1906, Theo. P. Scotland & Company executed and delivered to the said Merchants Bank a promissory note for $2,429.55, with interest at 12 per cent before and after maturity; that no part of said note has been paid except the interest thereon before and until the 1st day of December, 1908, and the sum of $328 paid on or about the 17th day of April, 1909; that on the 8th day of January, 1907, Theo. P. Scotland and Clara M. Scotland, his wife, executed and delivered to the plaintiff E. R. Reitsch three promissory notes for $1,000 each, and which sum they agreed to pay on January 15, 1905, March 1, 1908, and March 15, 1908, respectively, with interest at 12 per cent before and after maturity; but no part of said notes has been paid. That on the 8th day of January, 1907, and for the purpose of securing the said notes to the said Reitsch, the said Theo. P. Scotland and Clara M. Scotland, his wife, executed a mortgage to the said Reitsch on the three pieces of land hereinbefore described and owned by them.

The reply then goes on to state that thereafter and during the year 1907, Theo. P. Scotland and Theo. P. Scotland & Company transferred and assigned and set over to the defendant, John McCarty, all of their property, both real and personal, including the real property described in the complaint, in trust, however, for the benefit of the creditors of the said Theo. P. Scotland and Theo. P. Scotland & Company, it being understood and agreed that the said McCarty should, from the moneys received by him from the said property, pay mortgages, liens, and encumbrances, and, after the creditors of the said Scotland and the said Scotland & Company have been paid, surrender and deliver up to the said Scotland and Scotland & Company the balance of said property, but thereafter and in the year 1907 the said Clara M. Scotland, for the same purpose and "in consideration that said John McCarty advance

any money necessary to effect said purposes," assigned and set over to him her property, both real and personal.

The reply then alleges that at the time of the execution by the plaintiff McClintock of his mortgage to the Merchants Bank on the southeast quarter of the southeast quarter and lot 5, of section 30, and lots 1 and 2, of section 31, in township 156, north of range 72, he was not the owner in fee of said premises, but held the same in trust for the payment of the debts of the said Scotland, and it was understood and agreed that Theo. P. Scotland should assume said mortgage and pay it.

It then alleges that on or about the 22d day of January, 1909, Theo. P. Scotland, individually, and as secretary and treasurer of the Theo. P. Scotland & Company, made redemption for himself and for said company by paying to the Merchants Bank of Rugby all sums due, but that the said Theo. P. Scotland *fraudulently and with intent to hinder and delay the plaintiffs,* and to defraud them in the collection of the above-described claims and mortgages, procured the said Merchants Bank of Rugby, in place of certificates of redemption, to execute and deliver to him assignments of said sheriff's certificates of sale, and being the assignments set forth in the defendants' counterclaim, and, fraudulently and with intent to hinder and delay the plaintiffs *and defraud them in the collection of their claims and mortgages, procured said Merchants Bank to execute and deliver the said assignments in blank and without the name of the assignee therein, and thereafter, and without the knowledge or consent of the said Merchants Bank,* and with intent to hinder and delay the plaintiffs and defraud them in the collection of their claims and mortgages on said property, and with the full notice and knowledge of the defendant, *filled in and inserted in the said assignments the name of the defendant, John McCarty,* and delivered the same to said defendant without consideration therefor, or, if any consideration passed therefor, it was that the defendant advanced and loaned to Theo. P. Scotland and Theo. P. Scotland & Company the sum necessary to make redemption from said foreclosure sales, which sum or sums Theo. P. Scotland and Theo. P. Scotland & Company promised and agreed to pay to the defendant, and that it was upon these certificates so fraudulently signed that the sheriff's deeds were obtained.

The plaintiffs in their reply "then pray that the said assignments, deeds, and conveyances to the defendant McCarty be in all things ad-

·judged fraudulent, null, and void as to these plaintiffs, Reitsch and Mc-Clintock, and subsequent and subject to the claims and liens, mortgages, and encumbrances of the plaintiffs herein, or in the event the court so finds that the said assignments and deeds be adjudged and decreed to be held by the defendant to secure the payment of the redemption money advanced by the said defendant to Theodore P. Scotland and Theo. P. Scotland & Company and be adjudged to be a mortgage and lien upon the said premises for the amount of redemption money advanced by the defendant, if any, and interest, and plaintiffs be adjudged and decreed to have the right to redeem therefrom on the payment of said money paid to redeem said premises from foreclosure; and that the defendant be adjudged and decreed to hold the said premises in trust for said Theo. P. Scotland and Theo. P. Scotland & Company, and that the same be ·adjudged and decreed in all things to be subject to the lien and encumbrances and mortgages of the plaintiffs."

The trial court found the facts for the plaintiffs and respondents practically as they were set forth in the reply, and entered judgment decreeing that the said assignments and sheriff's deeds. were merely subject to the redemption money paid therefor and which it held and decreed to have been advanced by the defendant, McCarty, to Theo. P. Scotland and Theo. P. Scotland & Company, but otherwise to be the ·property of the said Theo. P. Scotland and Theo. P. Scotland & Company and subject to the liens of the plaintiffs. From this judgment defendant has appealed and asked for a trial *de novo*.

*Albert E. Coger* and *F. T. Cuthbert,* for appellant.

In the matter of pleadings, the legislature did not intend to eliminate the necessity of a reply to a counterclaim against plaintiff. Comp. Laws, §§ 7526, 7527, 8521.

Plaintiffs are now clearly estopped to reverse their position as to the reply being a proper pleading in this case. Sullivan v. Traders' Ins. Co. 169 N. Y. 213, 62 N. E. 147.

The general rule is that parties are bound by, and estopped to controvert, allegations or admissions in their own pleadings. 31 Cyc. 87; Myrick v. Bill, 3 Dak. 284, 17 N. W. 268.

Nor can a party obtain relief on a different theory from that upon which his pleading rests. 21 Enc. Pl. & Pr. 649, 650.

The provision of the instrument of assignment relating to the transfer of all property did not operate of itself to transfer real property. There was no actual transfer, and the assignment itself was invalid. MacLaren v. Kramar, 26 N. D. 244, 50 L.R.A.(N.S.) 714, 144 N. W. 85; 2 R. C. L. 680.

Where the assignment of a sheriff's certificate is unambiguous, the court will give it effect according to the natural and obvious meaning of the language employed, and parol evidence is inadmissible to vary its terms. Behr v. Gerson, 95 Ala. 438, 11 So. 115; Flynn v. Butler, 189 Mass. 377, 75 N. E. 730; Dunbar v. Montreal River Lumber Co. 127 Wis. 130, 106 N. W. 389; Thomas v. Board of Education, 81 N. J. Eq. 186, 86 Atl. 412; Weed v. Jewett, 2 Met. 608, 37 Am. Dec. 115; Hennessy v. Griggs, 1 N. D. 52, 44 N. W. 1010; Northwest Fuel Co. v. Bruns, 1 N. D. 137, 45 N. W. 699; National German American Bank v. Lang, 2 N. D. 66, 49 N. W. 414; Edwards & McC. Lumber Co. v. Baker, 2 N. D. 292, 50 N. W. 718; Plano Mfg. Co. v. Root, 3 N. D. 165, 54 N. W. 924; Hutchinson v. Cleary, 3 N. D. 270, 55 N. W. 729; William Deering & Co. v. Russell, 5 N. D. 319, 65 N. W. 691; Fletcher Bros. v. Nelson, 6 N. D. 94, 69 N. W. 53; Foster v. Furlong, 8 N. D. 282, 78 N. W. 986; Reeves v. Bruening, 13 N. D. 157, 100 N. W. 241; Alsterberg v. Bennett, 14 N. D. 596, 106 N. W. 49; Howe v. Walker, 4 Gray, 318; Rieck v. Daigle, 17 N. D. 365, 117 N. W. 346; American Nat. Bank v. Lundy, 21 N. D. 167, 129 N. W. 99; McCulloch v. Bauer, 24 N. D. 109, 139 N. W. 318; Cughan v. Larson, 13 N. D. 373, 100 N. W. 1088; Gilbert v. Moline Plough Co. 119 U. S. 492, 30 L. ed. 476, 7 Sup. Ct. Rep. 305, 3 Dak. 239, 15 N. W. 1; Hardwick v. McClurg, 16 Colo. App. 354, 65 Pac. 405, 21 Mor. Min. Rep. 412; State ex rel. Yeoman v. Hoshaw, 98 Mo. 358, 11 S. W. 759; Tyler v. Giesler, 85 Mo. App. 278; Enright v. Franklin Pub. Co. 24 Misc. 180, 52 N. Y. Supp. 704; Newman v. Blum, — Tex. —, 9 S. W. 178; Ætna Iron Works v. Owen, 62 Ill. App. 603; Brown v. O'Byrne, 153 Ala. 621, 127 Am. St. Rep. 77, 45 So. 129; Furculi v. Bittner, 60 Misc. 112, 125 N. Y. Supp. 36; Southern School Book Depository v. Holmes, 104 Miss. 736, 61 So. 698; Re Bird, 180 Fed. 229; Mulrooney v. Royal Ins. Co. 157 Fed. 598; Albert v. Albert, 12 Cal. App. 268, 107 Pac. 156; Pollard v. Sayre, 45 Colo. 195, 98 Pac. 816; Flynn v. Butler, 189 Mass. 377, 75 N. E. 730; Kasal v. Hlinka,

35 N. D.—36.

118 Minn. 37, 136 N. W. 569; Janvey v. Loketz, 122 App. Div. 411, 106 N. Y. Supp. 690.

A conveyance to secure an honest debt is not fraudulent. Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; Comp. Laws 1913, § 7220.

The contract viewed as a general assignment is void. MacLaren v. Kramar, 26 N. D. 244, 50 L.R.A.(N.S.) 714, 144 N. W. 85; Cutler v. Pollock, 4 N. D. 210, 25 L.R.A. 377, 50 Am. St. Rep. 644, 59 N. W. 1062; 2 R. C. L. 690.

"It is not every conveyance that has the effect of delaying or hindering creditors, that is, in itself, fraudulent. In some degree it is the effect of every assignment of a debtor's property for the benefit of his creditors, to produce hindrance and delay. United States v. Bank of United States, 8 Rob. (La.) 402; Farmers Bank v. Douglass, 11 Smedes & M. 539; Hafner v. Irwin, 23 N. C. (1 Ired. L.) 490; Hempstead v. Johnston, 18 Ark. 123, 65 Am. Dec. 458.

"It is the settled rule that, in the absence of statutes forbidding preferences, every debtor has the right to prefer one or more of his creditors to the rest, and he may do this in an assignment for the benefit of creditors as freely as in any other way." 2 R. C. L. 44.

When trustees act honestly and legally proper, they receive the favor and protection of the court. The legal presumption always is that a trustee has faithfully executed his trust, unless the contrary is fully and clearly proved. Burrill, Assignm. 6th ed. p. 568; Valentine v. Decker, 43 Mo. 583; Jefferis's Appeal, 33 Pa. 39; 1 Am. Lead. Cas. (Hare & W.) 303, notes; McLaughlin v. Park City Bank, 22 Utah, 473, 54 L.R.A. 343, 63 Pac. 589.

This is not a case of purchasing trust property. But even if it were, there is no showing to affect the actions of the so-called trustee, or the property, and the plaintiffs are in no position to raise such question.

The right to question such a purchase and have it set aside belongs only to the cestuis que trust, the trustee himself, creditors, and third persons generally, possess no such right. 39 Cyc. 369, 370.

That a trustee, under an extinguished trust, is not bound by its dissolved ties, is clear. 39 Cyc. 189; Pico v. Warner, 73 Cal. 17, 14 Pac. 377; Civil Code (Cal.) §§ 2279, 2282; 20 Cyc. 416.

"Equity will not aid avarice in purloining property." Anthes v. Schroeder, 3 Neb. (Unof.) 604, 92 N. W. 196; Curtis v. Price, 12 Ves.

Jr. 103, 33 Eng. Reprint, 35, 8 Revised Rep. 303; May, Fraud, Conv. 689; Story, Eq. Jur. 12th ed. 371, 381; Bradley v. Snyder, 14 Ill. 263; Richardson v. Welch, 47 Mich. 309, 11 N. W. 172; Bradley v. Larkin, 5 Kan. App. 11, 47 Pac. 315; Veeder v. Veeder, 141 Iowa, 495, 120 N. W. 61; Williams v. Nierenberg, — N. D. —, 115 N. W. 510.

The debtor is an indispensable party to a suit to set aside a fraudulent conveyance. 5 Enc. Pl. & Pr. 539–541.

"A trustee, who is also a large creditor, has the right to purchase for himself at a forced foreclosure sale." Leavell v. Leavell, 4 Ky. L. Rep. 889.

Even though a person has the right to redeem from a foreclosure sale, yet he may not be under any obligation to do so for his own protection; and if he pays the proper sum to the purchaser and receives an assignment in the due and usual form, it is not a redemption, but a purchase of the rights and title of the purchaser at foreclosure sale. 27 Cyc. 1866; McRoberts v. Conover, 71 Ill. 524; Comp. Laws 1913, § 7222.

An act which does not in any way obstruct creditors in the enforcement of their legal rights cannot be said to be fraudulent. Stevens v. Meyers, 14 N. D. 398, 104 N. W. 529; 4 Cyc. 219.

In general, a debtor's property may be reached by creditors, but not his talents or industry. He cannot be compelled to labor for the benefit of his creditors, and therefore they are not defrauded, and cannot complain if he donates his labor or services to another. 20 Cyc. 358; Voorhees v. Bonesteel, 16 Wall. 16, 21 L. ed. 268; Abbey v. Deyo, 44 N. Y. 343.

"A bill to reach a judgment debtor's assets which have been fraudulently conveyed will not lie until the creditor has exhausted his remedy at law to every available extent, and has secured a return of his execution nulla bona. Case v. Beauregard (Case v. New Orleans & C. R. Co.) 101 U. S. 688, 25 L. ed. 1004; Schofield v. Ute Coal & Coke Co. 92 Fed. 269; 2 Moore, Fraud. Conv. p. 771; Jones v. Green, 1 Wall. 331, 17 L. ed. 554; National Tube Works Co. v. Ballou, 146 U. S. 517, 36 L. ed. 1070, 13 Sup. Ct. Rep. 165; Taylor v. Bowker, 111 U. S. 110, 28 L. ed. 368, 4 Sup. Ct. Rep. 397.

The plaintiffs are estopped to attack the foreclosure sale for the reason that they received and accepted the purchase money. Moore, Fraud.

Conv. chaps. 3, 5, §§ 8, 20, pp. 83, 212; 20 Cyc. 434; 14 Am. & Eng. Enc. Law, 281; Lemay v. Bibeau, 2 Minn. 291, Gil. 251; Heaton v. Ainley, — Iowa, —, 74 N. W. 766.

The proof of fraud in any case must be clear and satisfactory. Graham v. Graham, 184 Mich. 638, 151 N. W. 596, 20 Cyc. 121; Kvello v. Taylor, 5 N. D. 76, 63 N. W. 889.

*Paul Campbell,* for respondent.

The title here is held in trust by the defendant for our grantors—mortgagors. By defendant coming in and answering, claiming title, in an action to determine adverse claims, he becomes the plaintiff and takes the burden of proof. Walton v. Perkins, 28 Minn. 413, 10 N. W. 424.

An unnecessary pleading is mere surplusage. A voluntary reply should be disregarded. 21 Enc. Pl. & Pr. 281, d; 18 Enc. Pl. & Pr. 693, note 1, 723c; Gull River Lumber Co. v. Keefe, 6 Dak. 160, 41 N. W. 743.

Fraud, where it exists, is always in issue, even without a pleading, where the party has not had opportunity to plead it. 9 Enc. Pl. & Pr. 684, 685; Jackson v. Brown, 76 Hun, 41; Lyon v. Plankinton, 15 S. D. 400, 89 N. W. 1018.

Like, where the only clear and convincing proof is peculiarly in the knowledge and power of the defendant and his fraudulent grantor. 2 Am. & Eng. Law, 487 (2), 489, note 6, 490 (d), 491 (c), 492, 493, 498 (4) (a), 499 (c), 499 (b), 500, 502 (d), 506, 4 a (1), 507, 510, 512 (b) 516 (3) (a), 519 (c), 522 (4), 524 (6), 526 (10); 1 Sutherland, p. 743, note 111; 4 Sutherland, p. 3736, note 284.

It is true that absence of evidence and the explanation on the part of the defendant, in whose knowledge alone certain facts existed, was considered by the court, and properly so. 20 Cyc. 346, 4, 450, 10, 763, N.

All the actions of a party to the transaction, where fraud is claimed, in connection therewith, are open to investigation and examination. 20 Cyc. 450, 769–771.

Concealment of the termination of a trusteeship is as much a fraud and raises an estoppel the same as actual false representations. 11 Am & Eng. Enc. Law, 2d ed. 427; 28 Am. & Eng. Enc. Law, 2d ed. 899, F, 951, B, 952, 953, 976.

Where money is advanced for the benefit of others and to protect

their properties and secure the repayment of the advancement, and such is the agreement its violation raises a resulting trust. 15 Am. & Eng. Enc. Law, 2d ed. 1138, 1147, 1149, 1187.

An attempted resignation of a trustee, not accepted, will not terminate the trust. 39 Cyc. 92, and 99.

Fraud and estoppel may arise from the statements, representations, and promises of the opposite party, without a pleading of them. 20 Cyc. 453, 751, 763.

Parol evidence is not admissible to contradict or vary written contracts. But the rule never applies in cases of fraud, estoppel, fraudulent concealment, or mistake. Miller v. Smith, 20 N. D. 96, 126 N. W. 499; Johnson v. Kindred State Bank, 12 N. D. 336, 96 N. W. 588; First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125; Grebe v. Swords, 28 N. D. 330, 149 N. W. 126; Putnam v. Prouty, 24 N. D. 517, 140 N. W. 93; Jasper v. Hazen, 1 N. D. 75, 44 N. W. 1018.

As trustee, McCarty became and was the successor in interest of the mortgagor, and he became the owner of the property. As such owner he could not take assignments. 27 Cyc. 1329, 1332.

Creditors are not necessary parties to an action to avoid fraudulent conveyances brought by mortgage creditors. 20 Cyc. 655 to 680, 697, 704, 711 to 714; Comp. Laws 1913, §§ 7404, 7406, 7442, 7447; Lyon v. Plankinton, supra.

A deed as security is not necessarily a fraud on creditors; it becomes such where, as in this case, it is untruthfully claimed as not such a transaction, but an absolute conveyance. 20 Cyc. 434, 435, 736, 737, 740, 769, 771, 782; 8 Cyc. 632, 647, 648, 674.

The rule of clear and satisfactory proof has no place or application here. 20 Cyc. 439 to 453, 750, 751, 763, 786; 27 Cyc. 991 to 1028; Smith v. Huff, 23 N. D. 37, 135 N. W. 772, Ann. Cas. 1914C, 1072; Adams v. McIntyre, 22 N. D. 337, 133 N. W. 915; Miller v. Smith, 20 N. D. 96, 126 N. W. 499; Omlie v. O'Toole, 16 N. D. 126, 112 N. W. 677; Forester v. Van Auken, 12 N. D. 175, 96 N. W. 301; Northwestern F. & M. Ins. Co. v. Lough, 13 N. D. 601, 102 N. W. 160; Wells v. Geyer, 12 N. D. 316, 96 N. W. 289; Merchants State Bank v. Tufts, 14 N. D. 238, 116 Am. St. Rep. 682, 103 N. W. 760; Smith v. Jensen, 16 N. D. 408, 114 N. W. 306; Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856.

· There exist in this case mistake, fraud, concealment, and estoppel, and respondent had the right, on cross-examination, to go into such matters,—things peculiarly within the knowledge of defendant.    16 Cyc. 681, 759, 771, 801; 20 Cyc. 15, 20, 22–24, 41; 6 Cyc. 286. ·

BRUCE, J. (after stating the facts as above).   This action, though nominally one to subject certain land to the lien of certain mortgages held by the plaintiffs, is really one to set aside and to declare null and void three sheriff's deeds.   It is a case, therefore, where the proof should be clear and convincing.   Though the briefs contain some 1,333 pages of printed matter and the record some 761, to say nothing of the exhibits which put in book form would fill a volume, the only real questions at issue are whether the certain sheriff's certificates under which these deeds were obtained were in fact purchased by said McCarty for himself or as trustee for the original owners of the land,· Theo. P. Scotland & Theo. P. Scotland & Company, or for them and their creditors, including the plaintiffs.

The plaintiffs' theory of the case as first set forth in their brief was "that the said Theo. P. Scotland, fraudulently and with intent to delay the plaintiffs and defraud them in the collection of the above-described claims and mortgages, procured the said Merchants Bank of Rugby, North Dakota, in place of certificates of redemption, to execute and deliver to him assignments of said sheriff's certificates of sale, and fraudulently and with intent to hinder and delay the plaintiffs and defraud them in the collection of their claims and mortgages procured said Merchants Bank to execute and deliver the said assignments *in blank and without the name of the assignee therein,* and thereafter and without the knowledge or consent of the said Merchants Bank, and with intent to hinder and delay the plaintiffs and defraud them in the collection of their claims and mortgages on said property, and with the full knowledge of the defendant, filled in and inserted the name of the defendant, John McCarty, and delivered the same· to the said defendant, without consideration therefor, or if any consideration passed therefor it was that the defendant advanced and loaned to Theo. P. Scotland and Theo. P. Scotland & Company the sum necessary to make redemption from said foreclosure sales, which sum or sums the said Scotland and Theo. P. Scotland & Company promised and agreed to pay to the defendant."

This allegation was contained in the reply, and the reply was verified by Paul Campbell, who was the attorney for the plaintiff and one of the principal witnesses of the plaintiff in the case. The assignments, however, were actually produced upon the trial, and when they were examined it was found that the name of John McCarty in one of them was in the handwriting of Paul Campbell, who at the time was attorney for the Merchants Bank of Rugby, and, as we have said, one of the principal witnesses in the present case, and who had verified the reply, and that in each of the other two assignments the name of John McCarty was in the handwriting of R. A. Warren, who was also one of the principal witnesses for the plaintiffs in the present case and who at that time was the assistant cashier, and, in the absence of Mr. McClintock, practically in control of the affairs of the Merchants Bank of Rugby.

Not only do these facts put an end to the claim of fraud on the part of McCarty in inserting his name in the assignments, but they naturally must lead us to doubt the memory of Paul Campbell and R. A. Warren as to the real transactions which were involved in this case, and to discredit the proof which plaintiffs have adduced at the trial, which the law requires to be clear and convincing. It is not necessary to say, and we do not say, that Mr. Campbell was dishonest in drawing the reply and making the verification. We do say, however, that there is in that reply and in that verification a clear proof of lack of remembrance and clarity of mind as to the real transactions.

After this proof failed, some other theory of the case was necessary, and two theories were advanced. The first was that McCarty was a trustee for the creditors of Scotland and Scotland & Company and for the plaintiffs, and that when he made the purchase he did so, not for himself, but as such trustee. The trouble with this theory is that there is nothing on which it can be based. Though the proof showed that there had been some kind of a trusteeship for some of the creditors, the plaintiffs were at no time parties to this agreement, and, even as to the parties interested, it had been repudiated and discontinued with the consent of all the parties prior to the assignment of the certificates.

The next theory is that the assignments were obtained by McCarty as a result of a conspiracy between him and Theo. P. Scotland and Clara Scotland, his wife, for the purpose of defrauding the creditors generally and especially the plaintiffs, and that McCarty lent to the Scot-

lands the money necessary to obtain the certificates. We find in the pleadings no allegation of this conspiracy, but merely that the defendant had made redemption for himself and Theo. P. Scotland & Company, and fraudulently inserted his own name into the blank certificates, and had loaned to Theo. P. Scotland and Theo. P. Scotland & Company the sums necessary to make the redemption.

Not only is this so, but the proof discloses that McCarty was himself a heavy creditor of the Scotlands. His claim was some $6,500. Why, being such a creditor, he should loan to the Scotlands the sum of $1,400 to redeem land which after such redemption would be subject to the mortgages of the plaintiffs, it is difficult to understand, and, although hundreds of pages of testimony are introduced in an attempt to show a conspiracy between McCarty and the Scotlands, we can hardly find the proof to be clear and convincing even upon this point. It is true it is urged that Scotland carried on the negotiations for the purchase of the certificates, but why should he not. He owed McCarty a large sum of money, and McCarty had befriended him in the past, and why should he not obtain his aid or employ him to do what he pleased? It is also true that a large number of transactions are gone into, and that as regards some of these matters the testimony is inconclusive. The transactions, however, cover long periods of years. No warning was given by the pleadings that they would be inquired into, and such evidence could hardly be other than confused and unsatisfactory. One of them is especially illustrative, and it is a contract dated February 13, 1909, which is as follows: "I have this day agreed to accept crop contract for the sale of the following land in favor of Clara M. Scotland described as follows: Southeast $\frac{1}{4}$ of sec. 5, T–156 R–72 price $2,800 less 1,200 mortgage loan and lot 5 S. E. $\frac{1}{4}$ sec. 30 lot one and two sec. 31–T–156 R–72 price 3,000 less mortgage loan of 1,500 and E. $\frac{1}{2}$ S. W. $\frac{1}{4}$ and S. W. $\frac{1}{4}$ N. W. $\frac{1}{4}$ and N. W. $\frac{1}{2}$ S. W. $\frac{1}{4}$ sec. 28 T. 156 R 72 price 2,800 less mortgage 2,000 and I hereby agree if the Mackey deal is satisfactory as to title I will cancel *either one* of the above contracts and give deed subject to mortgage loan on same."

It is claimed that this contract covers some of the land in question, and that in it McCarty agreed to sell to Clara M. Scotland all of the land covered by the agreement for an insignificant price (some $1,500) which was involved in the Mackey deal, and this claim is based upon

the affidavit of Paul Campbell that the contract was tampered with after it had been introduced in evidence on the trial; that when introduced in evidence on the trial it read, "I will cancel *every* one of the above contracts and give deed subject to mortgage loan on same," and that after said trial it was changed to, "I will cancel *either* one of the above contracts and give deed subject to mortgage loan on same."

The record disclosed that in copying the exhibit the stenographer had used the word "every" instead of "either," and that the learned trial judge in deciding the case decided it on the transcript as furnished to him. We have, however, the original exhibit before us. It undoubtedly contains the word "either," and not "every." It is clear to us that some word was first written under the word "either," but it is also clear from an examination of the exhibit under the microscope that the word "either" was written at the same time as the rest of the contract, in the same handwriting and with the same pencil, and that though some other word seems first to have been written and to have been erased, and the word "either" written over it, that first word could not possibly have been "every." The contract indeed was introduced by the plaintiff, and there is no proof whatever that after its introduction any change was made.

When we take into consideration the fact that the defendant McCarty was a heavy creditor of the Scotlands, and that the title to the land, even though subject to other mortgages, would be a benefit to him in other litigation, and that the bank was already heavily secured for all its advances, we can see nothing unreasonable or fraudulent in McCarty purchasing the certificates, and we must come down to the main question, and that is, whether when the certificates were given to McCarty and the name "McCarty" without the designation "trustee" was inserted therein by the attorney and the assistant cashier of the bank, it was in fact intended that the sale should be made to McCarty as a trustee, and not as a purchaser in his own name. In considering this matter we must remember that the Scotlands are not complaining, and that we have here an attempt by parol evidence to set aside a solemn written instrument. There is no question that the checks were signed by McCarty individually and on his own funds, and that as trustee he had no funds in the bank at all. There is no ambiguity about the assignments. No matter what may have been the rights of the Scotlands, it

is hardly in the mouths of the plaintiffs to dispute their plain words. See Behr v. Gerson, 95 Ala. 438, 11 So. 115; Flynn v. Butler, 189 Mass. 377, 75 N. E. 730; Thomas v. Board of Education, 81 N. J. Eq. 186, 86 Atl. 412.

The attempt of plaintiffs was to prove that the assignments of the sheriff's certificates were merely intended to be certificates of redemption, and we hardly think that such proof was admissible. Even, however, if we take plaintiffs' testimony at its best, it is hardly convincing when opposed to that of the defendant McCarty.

On behalf of plaintiffs the witness Warren testified: "I signed exhibit 'd.'" I do not remember the occasion and nothing about the circumstances.

Q. I will also ask you to examine exhibits 14, 17, and 15 together with exhibit 48, and state whether or not those instruments bear your signature?

A. They do, they were signed by me on behalf of the bank. I remember the transaction. The transaction was conducted on behalf of McCarty by Theo. P. Scotland. McCarty was not present. I remember Scotland came to the bank and spoke about taking these up, and if I remember right we didn't have *any assignment of sheriff's certificate* and he went out again to get some. I think he came back again in the afternoon between 2 and 3 o'clock, and we sat down at the table and he wrote these out.

Q. What was said between you and Scotland with reference to these matters?

A. Why he talked about taking—he talked about taking up the assignments or *getting assignments of these sheriff's certificates,* and he told me *that they were for John McCarty to put in John McCarty's name,* or that John McCarty was loaning him the money to take them up.

Q. Told you that John McCarty was loaning him the money to take these up?

A. Him the money to take these up.

Q. What did Scotland say with reference to taking these sheriff's certificates up?

A. The matter was talked over, *I do not remember.*

Q. Was the time about up within which redemption could be made?

A. I think so.

Q. Did he at that time make a remark to you that these matters had to be taken up?

A. I do not remember as he said the words they had to be taken up, but he said he was going to take them up.

Q. Did he say anything else with reference to the matter?

A. I think the words were used, he said, in place of mentioning McCarty's name, he said John is letting me have the money.

Q. Any conversation between you about or with reference to the assignment to McCarty instead of redeeming through the sheriff?

A. Yes, sir. In regard to putting in McCarty's name he said it wouldn't make any difference so far as *our security* was concerned.

Q. They had taken up the interest coupons before that time had they?

A. Yes, sir.

Q. And had made redemption of foreclosure on the premises of Scotland and Scotland & Company?

A. Yes, sir.

Q. And in those prior assignments and instruments executed and delivered to John McCarty, how was he usually designated?

A. You mean his name inserted?

A. Yes, sir.

A. John McCarty.

Q. It had not been, and was not, your usual custom and practice, was it, to insert the word "trustee"following that?

A. No.

Q. Have you at any time prior to the commencement of this action, on or about May 18, 1909, had any notice of knowledge that John McCarty's trusteeship had terminated?

A. I did not.

Q. Did either he or Scotland or had anybody at any time prior to that time communicate to you or tell you of the termination thereof.

A. No.

Q. Did Scotland or McCarty in any manner, at any time, intimate to you that these sheriff's certificates were being purchased by John McCarty individually, and not as trustee?

A. He did not.

Q. Did he in that conversation with you out of which these assignments arose say in substance and effect that John McCarty wanted to buy those certificates?

A. No. It was quite a long conversation. We talked, I suppose, all the time we were writing, but I remember distinctly he said he was getting the money from John to take them up.

The testimony of the witness Campbell is also too improbable to be clear and convincing to us. He first says in his sworn reply that the assignments were left in blank, and that McCarty fraudulently inserted his name therein. Mr. Campbell was a lawyer and Warren was an experienced business man. Why did they leave the name of the assignee in blank? Both of them knew the effect of an assignment. If they thought John McCarty was trustee and the redemption was made by him as trustee, why did they not insert the name and the word "trustee" attached to it? The Merchants Bank had foreclosed four mortgages. They held four sheriff's certificates which were within a week of maturity. The bank would have been entitled to four sheriff's deeds, but in spite of this fact Mr. McCarty's individual checks for about $1,300 are delivered to the bank, and in return for them the bank delivers assignments of the certificates executed to McCarty and McCarty alone. Mr. Campbell says that Scotland represented that the checks were to effect redemption. If they were, why did he, an experienced lawyer, not deliver certificates of redemption to McCarty as trustee? There were four assignments delivered at the same time, but no attempt is made to declare the fourth to be a certificate of redemption, as evidently the purchase price was sufficient. There were at the time of the purchase by McCarty approximately $6,000 of prior encumbrances against the three quarters which McCarty assumed when he took title. To put it in a different way, the land was worth about $12,000. The plaintiffs claim a $10,000 lien inferior to $6,000 of prior mortgages, which, with the $1,300 paid for the certificates, makes $17,300. If then McCarty had advanced the $1,300 as a redemption fund he would have received no benefit himself, nor would the other creditors of the estate, nor would the Scotlands, nor would anybody except the Merchants Bank and their officers. It is perfectly clear that at that time the bank had a large amount of other collateral security, and which appeared amply

sufficient to secure all of the debts owing to it by the Scotlands. Is it not more probable that they preferred liquidating some of their claims and taking $1,300 in cash, rather than to keep the lands which were then only estimated to be worth $12,000 with an encumbrance against them of $6,000, than that McCarty should have advanced to the Scotlands, who already owed him a large sum of money, $1,300, to effect a redemption which would benefit no one except the plaintiff bank.

Where indeed is the fraud in this case and what fraudulent representations were relied upon? The evidence of the witness Warren is totally unreliable, for it is inconsistent with the verified reply which must have been drawn in reliance upon his memory and version of the affair, together with that of attorney Campbell, and which is equally subject to criticism.

Even this testimony, however, falls far short of establishing fraud. The bank cashier Warren was not mislead. He knew what he was doing. He was no child, but an experienced business man. He knew the difference between a certificate of redemption and an assignment of a sheriff's certificate. He himself testified that they had no assignments on hand, and that they held up the transaction until they could get some. He knew that the certificate would soon ripen into a sheriff's deed. He represented the bank, but he knew that, after the assignment and in the days that elapsed between its making and the time when redemption could be cut off by the issuance of a sheriff's deed, the plaintiffs could redeem therefrom and the other creditors could redeem from the plaintiffs.

All he says, however, is that Scotland told him that he wanted to redeem, and that McCarty said he would loan him the money, but that Scotland told him to make the assignment of the sheriff's certificate to McCarty and McCarty alone. The check was McCarty's check, and on his own individual deposit, and the bank cashier was cognizant of this fact. He gave the assignment to McCarty individually with his eyes wide open. Where was there any fraud or anything that is inconsistent with McCarty, who was already a heavy creditor, taking an assignment as adidtional security for his heavy claims and to protect him in pending litigation, and even agreeing, if that was the fact, that when these debts were paid he would reconvey the land to the Scotlands?

Unnless he was still trustee under the trust deed, there was nothing at all improper in this transaction.

Plaintiffs' counsel in fact seems to realize this fact, so together with the claim that McCarty purchased as trustee for the Scotlands he also, by leading questions, obtained testimony to the effect that Warren believed McCarty was purchasing not for Scotland, or for himself, but as trustee for the creditors, and this under the trust arrangement to which we have shown the plaintiffs were not parties, and which in fact had been repudiated by even those creditors who had been parties thereto. Yet, with all his business experience, the cashier did not insert the word "trustee" in the assignment which he executed, and, even if he had, it was a conveyance to these creditors under a trust deed to which the plaintiffs were not parties. If, therefore, there was a fraud, it was a fraud in which the plaintiffs by their agent fully participated. They received the purchase price, that is to say, the benefit of the transaction.

"Where it is shown that a complainant in a bill to set aside a fraudulent conveyance participated in or instigated such conveyance, the court will as a general rule leave him in the position which he was instrumental in creating, and will hold that he is estopped by his conduct from attacking the conveyance. The general rule is that a creditor who, with knowledge of the transaction, receives a benefit under a conveyance fraudulent as to creditors, thereby elects to affirm it, and is estopped from questioning its validity." 20 Cyc. 434. The creditor must not have participated in or assented to the conveyance of which he complains, for if he has he cannot afterwards be heard to assert that the transfer was fraudulent *per se* as to him. 14 Am. & Eng. Enc. Law, 281.

"There can be no doubt," says the supreme court of Minnesota in the case of Lemay v. Bibeau, 2 Minn. 291, Gil. 251, "but that a conveyance of real estate in due form, even if made with the intent to defraud creditors, is good as between the parties and privies, and can only be avoided by creditor of the fraudulent grantor . . . and the creditor may have his election either to confirm the conveyance or attempt to avoid it but he cannot do both. He cannot receive a benefit under the conveyance and then turn around and claim that the conveyance is fraudulent and void; and it is held that by receiving a benefit under

the conveyance claimed to be fraudulent he thereby affirms it so as to be estopped from setting up fraud or other facts in avoidance of it. He cannot hold on to such part of the contract as may be desirable on his part and avoid the residue, but must rescind *in toto,* if at all, and the party who would disaffirm a fraudulent contract must return whatever he has received upon it."

The form of the proceedings in this case is worthy of notice. The plaintiffs at no time brought an action to or attempted to rescind the conveyances or the assignments of the certificates. Nor did they at any time offer to pay back the $1,300 which they had received from Mc-Carty. Not only this, but they seek to set aside a solemn conveyance. They allege fraud, and in such cases proof must be clear and convincing and fraud must be proved by facts which are inconsistent with an honest purpose. Graham v. Graham, 184 Mich. 638, 151 N. W. 596; 20 Cyc. 121; Kvello v. Taylor, 5 N. D. 76, 63 N. W. 889.

That proof, however, is entirely contradictory within itself. They first say and swear that the assignments were made in blank and the name of McCarty was fraudulently inserted by the defendant. The proof shows that they wrote in the name of McCarty themselves. They then rely upon the proposition that McCarty was still trustee under the trust deed, yet they were not parties to this trust deed, and it had been repudiated by those who were. And in addition to that their agents, a lawyer and an experienced bank cashier, filled out the assignments and didn't mention the fact of the trusteeship at all. Confronted by these facts they then seek to prove a fraudulent conspiracy on the part of the Scotlands and the defendant. There is, however, no allegation of such conspiracy either in the complaint or in the reply, and there is no satisfactory proof of it.

The judgment of the District Court is reversed, and the cause remanded, with directions to enter judgment dismissing the complaint and reply and quieting the title to the premises in the defendant as against the claims of the plaintiffs and each of them. The costs and disbursements will be taxed against the plaintiffs.

CHRISTIANSON, J., being disqualified the HONORABLE JAMES M. HANLEY, Judge of the Twelfth Judicial District, sat in his place.